UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
DASHANTE SCOTT JONES,                                              :
                                                                   :
                              Plaintiff,                           :
                                                                   :   **INITIAL REVIEW**
           -against-                                               :   **ORDER**
                                                                   :
OFFICER BARAN, ET AL.,                                             :   3:23-CV-1039 (VDO)
                                                                   :
                              Defendants.                          :
------------------------------------------------------------------ x

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Dashante Scott Jones a sentenced inmate in the custody of the Connecticut Department of Correction ("DOC") at Garner Correctional Institution, has filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. The complaint brings claims against the following three DOC employees who all work at Cheshire Correctional Institution ("Cheshire CI"): Officer Baran, Officer Bryant, and Supervisor Cabellero. Plaintiff asserts his claims against Defendants in their individual and official capacities.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

I.      **FACTUAL BACKGROUND**

Plaintiff's factual allegations are, at times, difficult to follow. But the Court summarizes Plaintiff's basic allegations to provide a context to its rulings below.

On April 20, 2023, Officer Baran asked Plaintiff if he had problems with another correctional staff member, Wagner, against whom Plaintiff had filed a federal lawsuit. Officer Baran then requested all of Plaintiff's legal work and his cane. Plaintiff claims that Wagner had asked Officer Baran to take Plaintiff's cane so that Plaintiff could be seen walking on camera so as to show that Wagner had not hurt Plaintiff badly. Plaintiff refused to provide his legal work or his cane.

Officer Baran and Supervisor Cabellero ordered Plaintiff to step to the cell door and then attempted to confiscate his cane. Plaintiff yelled for Supervisor Cabellero to help him after he heard someone say that they should try to make it look like Plaintiff had committed suicide.

Supervisor Cabellero called a Code Orange to report (allegedly falsely) that there was an assault on staff rather than on Plaintiff. The three defendants and another non-party correctional officer rushed into Plaintiff's cell, where they attacked him and exposed him repeatedly to pepper spray. Plaintiff told Defendants that the pepper spray could kill him. Defendants then started to pull his hair out of his scalp and beat him.

After Officer Brady called him a racial slur and threatened to "snap" his neck, Plaintiff heard someone state that they should stick to the plan to slice Plaintiff's wrist. Later, Officer Baran called him a racial slur and cut into Plaintiff's forearm with a metal blade. While Plaintiff was bleeding from the cut, he was exposed to more pepper spray, which prevented him from being able to see.

Plaintiff begged for medical assistance and his asthma so that he could breathe. Plaintiff claims that Supervisor Cabellero refused to provide him with the asthma pumps, and that she stated that medical staff had reported Plaintiff did not have any breathing issues.

Later, Plaintiff claims that a nurse pushed an asthma pump into his mouth, and that Supervisor Cabellero instructed staff not to report any injuries. He claims a nurse provided him medical assistance later that evening because she felt badly for him.

In addition, Plaintiff claims that Supervisor Cabellero refused to provide him access to a wheelchair or cane from April 2, 2023 until his transfer out of Cheshire CI. Consequently, during this time period, Plaintiff kept falling down, crawling on the ground, urinating on himself, and was unable to shower.

## II.  **LEGAL STANDARD**

Under 28 U.S.C. § 1915A, courts must review prisoner civil complaints in which a prisoner seeks redress from a governmental entity and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability

requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)). However, *pro se* litigants are still required to comply with Rule 8 of the Federal Rules of Civil Procedure. *See, e.g.*, *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."). Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original). A statement of claim that is not short and direct places "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'" *Harden v. Doe*, No. 19-CV-

3839(CM), 2019 WL 2578157, at *2 (S.D.N.Y. June 24, 2019) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (internal quotation marks and citation omitted).

### III.   DISCUSSION

The Court construes Plaintiff's complaint as asserting (1) First Amendment retaliation; (2) Eighth Amendment excessive force; (3) Eighth Amendment deliberate indifference; (4) Fourteenth Amendment equal protection violation; (5) violations of the Americans with Disabilities Act ("ADA") and Rehabilitation Act; (6) violations of state criminal statutes; (7) violations of state civil statutes; and (8) state law defamation.

Plaintiff's request for relief seeks only punitive and compensatory damages against Defendants in their individual and official capacities. Plaintiff may not, however, proceed on his damages claim for First and Eighth Amendment violations under 42 U.S.C. § 1983 against Defendants in their official capacities. This is so because any claims based on constitutional violations for money damages against Defendants, who are state employees, in their official capacities are dismissed as barred by the Eleventh Amendment. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Thus, the Court considers whether Plaintiff has stated any plausible claims for First or Eighth Amendment violations against Defendants in their individual capacities.

#### A.   First Amendment Retaliation

To plead a First Amendment retaliation claim, an inmate must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against [him or her], and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (internal citation and quotation marks omitted). The Second Circuit has "instructed district courts to approach

5

prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (internal citation and quotation marks omitted). "Protected speech or activity includes filing a lawsuit, an administrative complaint, or a prison grievance." *Baltas v. Maiga*, No. 3:20cv1177 (MPS), 2020 WL 6275224, at *8 (D. Conn. Oct. 26, 2020). For purposes of initial review, Plaintiff has adequately stated facts to suggest that Defendants Baran, Bradley and Cabellero took adverse action against him for filing a federal lawsuit against their coworker. Thus, Plaintiff may proceed on his First Amendment retaliation claim for damages against Defendants in their individual capacities.

### B. Eighth Amendment Excessive Force

In order to adequately allege an Eighth Amendment excessive force claim, Plaintiff must show that the force employed by a defendant was not "applied in a good-faith effort to maintain or restore discipline" but was done "maliciously or sadistically to cause harm," and that the harm done was objectively serious enough to violate Plaintiff's constitutional right to be free from such harm. *See Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000). An officer can also be held liable under § 1983 for "the preventable harm caused by the actions of the other officers where that officer observes or has reason to know that . . . any constitutional violation has been committed by a law enforcement official." *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

Plaintiff's allegations adequately state that Defendants subjected him to excessive force with the use of pepper spray, physical assault, and cutting him with a metal blade. Thus,

Plaintiff may proceed against Defendants on his Eighth Amendment excessive force claim for damages against Defendants in their individual capacities.

    **C.**    **Eighth Amendment Deliberate Indifference to Medical Needs**

To state an Eighth Amendment claim for deliberate indifference to his medical needs, Plaintiff must allege facts showing that both his medical need was serious and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003). A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that is capable of causing death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162-63 (2d Cir. 2003). Subjectively, the defendant must have been "subjectively reckless" by denying the plaintiff medical care. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under § 1983. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Nor does a disagreement over the treatment provided show deliberate indifference. *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015).

Plaintiff's allegations are sufficient to suggest that all Defendants acted with medical indifference to Plaintiff's serious medical needs after his assault and exposure to pepper spray. Accordingly, Plaintiff may proceed on his Eighth Amendment medical indifference claim for damages against Defendants in their individual capacities.

    **D.**    **Equal Protection Violation**

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law. U.S. Const. amend. XIV. "To prove an equal protection violation, [a plaintiff] must

prove purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (internal citation omitted).

To the extent Plaintiff may be asserting that he was subjected to an equal protection violation due to Defendants' use racial slurs and the alleged assault and medical deprivation, Plaintiff has not pleaded a cognizable equal protection claim. Plaintiff's allegations provide no suggestion that he was treated differently than other similarly situated comparators. *See Rasheen v. Adner*, 356 F. Supp. 3d 222, 242 (N.D.N.Y. 2019) (dismissing equal protection claim because the plaintiff failed to allege any facts suggesting how he was treated differently than any similarly situated inmate). Nor has Plaintiff adequately pleaded claims under the selective enforcement or class-of-one theories of equal protection. *See Salaam v. Stock*, No. 9:19-cv-689 (AMN/TWD), 2023 WL 3579770, at *3 (N.D.N.Y. May 22, 2023) (describing additional equal protection theories.). Accordingly, the Court dismisses as not plausible any Fourteenth Amendment equal protection claim. *See Jones v. Schortman*, No. 3:22-CV-1512 (SVN), 2023 WL 4157339, at *4 (D. Conn. June 23, 2023) (dismissing Jones's equal protection claim on similar grounds).

### E.  Disability Discrimination

Plaintiff's allegations indicate that Supervisor Cabellero deprived him of his wheelchair and cane so that he was required to walk without his assistive devices from April 2, 2023 until his transfer from Cheshire CI. The Court construes Plaintiff's allegations as raising ADA/Rehabilitation Act claims based on his inability to access or benefit from the DOC facility.

In order to successfully plead a claim under Title II of the ADA or § 504 of the Rehabilitation Act, Plaintiff must allege that (1) he is a qualified individual with a disability;

(2) that the defendants are subject to the ADA and Rehabilitation Act; and (3) that Plaintiff was denied the opportunity to participate in or benefit from Defendants' services, programs, or activities, or was otherwise discriminated against by Defendants because of his disabilities. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

For purposes of initial review, Plaintiff may proceed against Supervisor Cabellero in her *official* capacity[1] on the theory that Plaintiff is a qualified individual with a disability and that she denied Plaintiff an opportunity to participate or benefit from the DOC facility because of his disability. *See Jones*, 2023 WL 4157339, at *3 (permitting Jones to proceed on his ADA/Rehabilitation Act claim based on denial of access to walker and wheelchair).

### F.    State Criminal Statutes

Plaintiff's claims against Defendants for alleged violations of state criminal statutes are incognizable.

Under Connecticut law, there is a presumption that private enforcement of a criminal statute does not exist unless expressly stated in the statute. *Provencher v. Town of Enfield*, 284 Conn. 772, 777 (2007). The burden is on the plaintiff to overcome that presumption and show that the statute creates an implied right of action. *Id.* at 777–78; *see also Ward v. Housatonic Area Regional Transit Dist.*, 154 F. Supp. 2d 339, 358 (D. Conn. 2001) (no private right of action under Connecticut criminal statute when there was "no private cause of action

---

[1] Although the ADA and Rehabilitation Act do not permit for individual capacity suits against state officials, *see Garcia v. SUNY Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001), the ADA, in some circumstances, serves to abrogate state sovereign immunity and permit monetary damage claims against officials in their official capacity. *See United States v. Georgia*, 546 U.S. 151, 159 (2006). At this time, the Court expresses no opinion as to whether sovereign immunity is waived within the specific context of this case. This question is better addressed after each party has had an opportunity to argue its respective position.

contemplated by" it). Plaintiff has not alleged any criminal statutes expressing a cause of action for private enforcement.

### G.     State Civil Rights Statutes

Plaintiff asserts claims against Supervisor Cabellero for violation of the following Connecticut General Statutes concerning his mobility: § 22-345 (concerning licenses and tags for guide dogs for the blind, deaf, or mobility-impaired); § 46-44 (concerning access and interference with use of guides and assistance dogs for the blind, deaf or mobility-impaired); and § 46a-64 (discriminatory public accommodations practices based on, *inter alia*, physical disability). The statutory provisions concerning the use of assistance dogs bear no relevance to this case, and § 46a-64 only provides a private right of action after the plaintiff files an administrative complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). *See Green v. DGG Properties Co.*, 2013 WL 395484, at *9 (D. Conn. Jan. 31, 2013) (explaining a private right of action exists under § 46a–100 for violations of § 46a–64 after the CHRO's release of jurisdiction). Plaintiff has not alleged or shown that he filed a complaint with, and obtained a release from, the CHRO for his § 46a-64 claim. *Desardouin v. United Parcel Serv., Inc.*, 285 F.Supp.2d 153, 159 (D. Conn. 2003) (dismissing § 46a–64(a) claim where plaintiff failed to allege in his complaint receipt of CHRO release letter).

The Court will, however, permit Plaintiff to proceed with claims asserting violations of C.G.S. §§ 46a-71 and 46a-77 against Officer Cabellero in her official capacity. These claims shall proceed on a theory of liability mirroring Plaintiff's ADA/Rehabilitation Act claim. *See Paschal-Barros v. Quiros*, No. 3:21-cv-698 (SALM), 2022 WL 124544 at *11 (D. Conn. Jan. 13, 2022) ("Because § 46a-77(c) requires compliance with the ADA, the same analysis applies

to this state law claim as applied to plaintiff's ADA claim."). Should Defendant Cabellero believe that these claims are barred by sovereign immunity principles, she is encouraged to raise the issue through the filing of a motion to dismiss.

### H. Defamation

A defamatory statement is a "communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him . . ." *Bailey v. Nexstar Broadcasting, Inc.*, No. 3:19-cv-00671 (VLB), 2020 WL 1083682, at *5 (D. Conn. Mar. 6, 2020). It is well settled that "for a claim of defamation to be actionable, the statement must be false . . . and under the common law, truth is an affirmative defense to defamation." *Gleason v. Smolinski*, 319 Conn. 394, 431 (2015). "To be actionable, the statement in question must convey an objective fact, as generally, a defendant cannot be held liable for expressing a mere opinion." *NetScout Sys., Inc. v. Gartner, Inc.*, 334 Conn. 396, 410 (2020). "To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Simms v. Seaman*, 308 Conn. 523, 547–48 (2013) (internal quotation marks omitted). The test of a defamation complaint's sufficiency is "whether it is detailed and informative enough to enable [a] defendant to respond . . ." *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986). Thus, a plaintiff must plead "what defamatory statements were made . . . when they were made, and to whom they might have been made*.*" *Abrahams v. Young & Rubicam*, 979 F. Supp. 122, 128 (D. Conn. 1997). And to "constitute a publication it is

11

necessary that the defamatory matter be communicated to someone other than the person defamed." Restatement (First) of Torts § 577 (1938).

Plaintiff appears to assert a claim of defamation. He has alleged that Supervisor Cabellero and Baran made false statements about his having assaulted correctional staff. At this early stage in the matter, the Court will permit Plaintiff's defamation claims against Defendants Officer Baran and Supervisor Cabellero to proceed to service for further development. *See Jones*, 2023 WL 4157339, at *6 (permitting similar claim to proceed beyond initial review).

## IV. CONCLUSION

The Court enters the following orders:

(1) Plaintiff may **PROCEED** with his claims of First Amendment retaliation, Eighth Amendment excessive force, and Eighth Amendment medical indifference for damages against Defendants Baran, Bradley, and Cabellero in their individual capacities.

(2) Plaintiff may **PROCEED** on his state law defamation claim against Supervisor Cabellero and Officer Baran in their individual capacities.

(3) Plaintiff may also **PROCEED** with his ADA/Rehabilitation Act, Conn. Gen. Stat. § 46a-71, and Conn. Gen. Stat. § 46a-77 claims against Supervisor Cabellero in her official capacity.

(4) All other claims that Plaintiff sought to bring through the complaint are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915A(b)(1).

**Plaintiff has two options as to how to proceed in response to this Initial Review Order:**

(1) If Plaintiff wishes to proceed immediately **only** on the claims set forth in items one through three above against Defendants Baran, Bradley, and Cabellero, he may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket on or before **Monday, December 18, 2023**, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph. The Court will then begin the effort to serve process on Defendants Baran, Bradley, and Cabellero in the capacities described above.

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed in order to attempt to state a viable claim, he may file an amended complaint by **Tuesday, January 2, 2024**. An amended complaint, if filed, will completely replace the complaint, and the Court will not consider any allegations made in the original complaint in evaluating any amended complaint. The Court will review any amended complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an amended complaint, the complaint this Initial Review Order addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **Wednesday, January 3, 2024**, the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address.** If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c) provides that he **MUST** notify the Court. Failure to do so may result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If

Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address. Plaintiff should also notify Defendants or counsel for Defendants of his new address.

**SO ORDERED.**

Hartford, Connecticut
November 17, 2023

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge